Christopher J. Hunker
Clark L. Xue
Matthew J. Bopp
**LINKLATERS LLP**
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Country Garden Holdings Company Limited,[1] | Case No. 25-12175 (PB) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION UNDER CHAPTER 15 FOR**
**RECOGNITION OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

Fong Ching Lam, solely in his capacity as the duly authorized foreign representative (the "Foreign Representative") for Country Garden Holdings Company Limited ("Country Garden" or the "Debtor," and together with its directly and indirectly owned subsidiaries, the "Country Garden Group") which is the subject of a proceeding in Hong Kong entitled *In the Matter of Country Garden Holdings Company Limited* (Case Number HCMP 1366 / 2025) (the "Hong Kong Proceeding") currently pending before the High Court of the Hong Kong Special Administrative Region Court of First Instance (the "Hong Kong Court") concerning a scheme of arrangement (the "Scheme") between Country Garden and those persons defined in the Scheme as "Scheme Creditors" (the "Scheme Creditors") pursuant to sections 670, 673 and 674 of the Hong Kong Companies Ordinance (Cap. 622 of the Laws of Hong Kong) (the "Companies Ordinance"),

---

[1]    Country Garden Holdings Company Limited's company registration number is 177345, and the location of its registered office is Conyers Trust Company (Cayman) Limited, Cricket Square, Hutchins Drive, P.O. Box 2681, George Town, Grand Cayman KY1-1111, Cayman Islands.

respectfully submits this verified petition (the "Verified Petition" and, together with the Form of Voluntary Petition filed by the Debtor, the "Chapter 15 Petition") seeking entry of an order pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, 1521 and 1522 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"):

    a.  finding that: (i) the Debtor is eligible to be a "debtor" under chapter 15 of the Bankruptcy Code; (ii) the Hong Kong Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code or, in the alternative, a "foreign nonmain proceeding" within the meaning of section 1502(5) of the Bankruptcy Code; (iii) the Foreign Representative satisfies the requirements of a "foreign representative" under section 101(24) of the Bankruptcy Code; and (iv) the Chapter 15 Petition was properly filed and meets the requirements of section 1515 of the Bankruptcy Code;

    b.  granting recognition of the Hong Kong Proceeding as a "foreign main proceeding" or, in the alternative, a "foreign nonmain proceeding" under section 1517 of the Bankruptcy Code;

    c.  granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code; and

    d.  granting related relief.

In support of the Chapter 15 Petition, the Foreign Representative respectfully submits: (i) the *Declaration of Fong Ching Lam in Support of the Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Foreign Representative Declaration") and (ii) the *Declaration of Richard Woodworth as Hong Kong Counsel in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Counsel Declaration" and, together with the Foreign Representative Declaration, the "Supporting Declarations"), which have been filed contemporaneously herewith and are incorporated herein by reference as if fully set forth herein.  In further support of the relief requested, the Foreign Representative respectfully represents as follows:

2

## PRELIMINARY STATEMENT

1.        The Debtor is a holding company that has issued, borrowed, or guaranteed secured and unsecured debt that it seeks to restructure through the Scheme.  It is the ultimate parent of the Country Garden Group, which is a leading property developer in Hong Kong and the People's Republic of China (the "PRC") that is principally engaged in property development, construction, interior decoration, property investment, and the development, operation, and management of hotels.  Like other real estate groups in the region, the Country Garden Group has been negatively affected by unprecedented events affecting the PRC real estate sector, including tightening of financing policies, reduced bank lending for real estate development and a continued economic downturn in the PRC.  These factors have limited the Country Garden Group's ability to access the capital markets that had funded growth and development in the sector, resulting in significant deterioration of the Country Garden Group's financial position and an unsustainable existing capital structure.  The Debtor has proposed the Scheme to implement a holistic financial restructuring of its Existing Debt (as defined below) (the "Restructuring") thereby reducing the short-term debt burden of the wider Country Garden Group and leaving it with a sustainable capital structure and a strengthened balance sheet that will allow the Country Garden Group to continue as a going concern.

2.        As part of its Restructuring strategy, the Debtor and a substantial number of its creditors have entered into the Restructuring Support Agreement (as defined below) under which creditors agreed to the terms of the Restructuring and to support the Scheme.  The Debtor will hold scheme meetings for each class of creditors (the "Scheme Meetings") for the Scheme on or around November 3, 2025, to solicit approval of the Scheme by the requisite majority of each such class

of creditors under Hong Kong law.[2]  If the Scheme is approved by each class of creditors, the Debtor will ask the Hong Kong Court to sanction the Scheme at a hearing scheduled for December 4, 2025 (the "Sanction Hearing").  The Scheme is an integral component of the Restructuring and the most effective way to deleverage the Debtor's and the wider Country Garden Group's overall balance sheet.  The Scheme is also in the best interests of the Country Garden Group's creditors, as it provides them with the opportunity to benefit from the Country Garden Group's turnaround strategy.

3.      To implement the Restructuring, the Debtor commenced the Hong Kong Proceeding to obtain approval of the Restructuring by the requisite majority of each class of affected creditors and approval of the Scheme by the Hong Kong Court under the Companies Ordinance.  The Debtor also commenced this chapter 15 case (the "Chapter 15 Case") to obtain recognition of the Hong Kong Proceeding as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) and related relief.[3]  In order to mitigate the risk of a dissenting creditor suing the Debtor in a U.S. court to frustrate the Debtor's successful financial restructuring under the Scheme, the Foreign Representative files the Chapter 15 Petition to recognize the Hong Kong Proceeding.  For the reasons set forth below, the Foreign Representative respectfully requests that this Court grant the relief requested herein.

---

[2]     The Convening Order (as defined below) initially set the Scheme Meetings on October 22, 2025 subject to "any adjournment as may be appropriate."  The Debtor is currently negotiating certain final commercial terms with its Scheme Creditors, and accordingly plans to adjourn the Scheme Meetings to on or around November 3, 2025.

[3]     The Foreign Representative is not seeking provisional relief at this time because he is not aware of any imminent threat to the Debtor's assets located within the territorial jurisdiction of the United States or to the Hong Kong Proceeding by virtue of actions in the United States.  If circumstances change or the Foreign Representative becomes aware of additional facts, the Foreign Representative reserves all rights to seek provisional relief pursuant to section 1519 of the Bankruptcy Code to protect the Debtor and its assets.

**BACKGROUND**

I.      **The Debtor and the Country Garden Group**

4.      Country Garden was incorporated in the Cayman Islands as a limited liability company on November 10, 2006.  Country Garden maintains a principal place of business and headquarters in Hong Kong located at Suite 1702, Dina House, Ruttonjee Centre, 11 Duddell Street, Central, Hong Kong, and is also registered as a non-Hong Kong company in Hong Kong under Part 16 of the Companies Ordinance.  The shares of Country Garden were listed on the main board of The Stock Exchange of Hong Kong Limited (the "HKEX") with stock code 02007 on April 20, 2007.  Country Garden is the ultimate holding company of the Country Garden Group, which comprises Country Garden and its directly and indirectly owned subsidiaries, which are incorporated in various jurisdictions including the Cayman Islands, PRC, Hong Kong, New Zealand, Australia, the United States, Indonesia, Thailand, Malaysia, and the British Virgin Islands.

5.      The business of the Country Garden Group is property development, construction, interior decoration, property investment, and the development, operation, and management of hotels, primarily in the PRC.  For the year ending on December 31, 2024, the Country Garden Group's total revenue was approximately RMB 252.756 billion (or approximately USD 35.105 billion).  Revenue from property sales, and other income such as technology-enabled construction and hotel operations accounted for 97.2% and 2.8%, respectively.

II.     **Existing Capital Structure and Existing Debt**

        A.      **Financing Agreements**

6.      Country Garden has entered into various financing agreements and incurred certain financial indebtedness.  The first broad category of Country Garden's financial indebtedness comprises of three secured syndicated loans governed by Hong Kong law (the "Existing

Syndicated Loans" or the "Existing Class 1 Debt").  Country Garden is the borrower under the Existing Class 1 Debt.

7.    Under the second broad category of financial indebtedness, Country Garden is (i) the guarantor of two series of publicly traded HK dollar-denominated convertible bonds governed by English law (the "Existing Convertible Bonds"); (ii) the issuer of fifteen series of  publicly traded U.S. dollar-denominated senior notes governed by New York law (the "Existing US Public Notes"); (iii) the borrower of two unsecured bilateral loans governed by Hong Kong Law (the "Existing HK Bilateral Loans"); and (iv) the guarantor or borrower under thirteen bilateral loans, which have the benefit of credit support provided by PRC-incorporated subsidiaries of the Group governed by PRC law (the "Existing Loans (Onshore Credit Support)" and together with the Existing Convertible Bonds, the Existing US Public Notes, and the Existing HK Bilateral Loans, the "Existing Class 2 Debt," and together with the Existing Class 1 Debt, the "Existing Debt").

8.    Lastly, Country Garden is also a borrower or guarantor under certain other financial indebtedness that is excluded from the Scheme, which includes various offshore project financing, other onshore loans and corporate bonds, and trade and other payables and accruals.

### 1.    Overview of the Existing Class 1 Debt

9.    The Existing Class 1 Debt comprises of obligations incurred by Country Garden with an aggregate outstanding principal amount of approximately USD 3.618 billion as of December 31, 2024 under the following instruments:

    a.  ***Existing Syndicated Loans***: three secured syndicated loans governed by Hong Kong law, including:

        i.  HKD 8,133,300,000 and USD 453,000,000 dual currency term loan facility agreement dated October 21, 2020, by and between, among others, Country Garden as borrower and Bank of China (Hong Kong) Limited as facility agent and lender;

      ii.      HKD 6,076,000,000 and USD 559,000,000 dual currency term loan facility agreement dated July 22, 2021, by and between, among others, Country Garden as borrower and China Construction Bank Corporation, Hong Kong Branch as facility agent and lender; and

      iii.      HKD 3,583,020,000 and USD 388,660,000 dual currency term loan facility agreement dated July 20, 2023, by and between, among others, Country Garden as borrower and Bank of China (Hong Kong) Limited as facility agent and lender.

**2.**      **Overview of the Existing Class 2 Debt**

10.      The Existing Class 2 Debt comprises of liabilities incurred by Country Garden with an aggregate outstanding principal amount of approximately USD 11.076 billion as of December 31, 2024 under the following instruments:

      a.      ***Existing Convertible Bonds***: two series of publicly traded HKD denominated convertible bonds governed by English law:

      i.      HKD 3,900,000,000 4.95% Secured Guaranteed Convertible Bonds due 2026 (ISIN: XS2434313016); and

      ii.      HKD 7,830,000,000 4.50% Secured Guaranteed Convertible Bonds due 2023 (ISIN: XS1914667057).

      b.      ***Existing US Public Notes***: fifteen series of publicly traded U.S. dollar-denominated senior notes governed by New York law:

      i.      USD 1,000,000,000,000 8.0% Senior Notes due 2024 (ISIN: XS1880442717);

      ii.      USD 550,000,000 6.5% Senior Notes due 2024 (ISIN: XS1974522853);

      iii.      USD 750,000,000 5.125% Senior Notes due 2025 (ISIN: XS1750118462);

      iv.      USD 544,000,000 5.4% Senior Notes due 2025 (ISIN: XS2178949561);

      v.      USD 500,000,000 6.15% Senior Notes due 2025 (ISIN: XS2051371222);

      vi.      USD 1,000,000,000,000 3.125% Senior Notes due 2025 (ISIN: XS2240971742);

7

vii.     USD 500,000,000 4.2% Senior Notes due 2026 (ISIN: XS2210960022);

viii.    USD 1,350,000,000 7.25% Senior Notes due 2026 (ISIN: XS1974522937);

ix.      USD 700,000,000 2.7% Senior Notes due 2026 (ISIN: XS2280833133);

x.       USD 350,000,000 5.625% Senior Notes due 2026 (ISIN: XS1512953040);

xi.      USD 550,000,000 5.125% Senior Notes due 2027 (ISIN: XS2100725949);

xii.     USD 450,000,000 5.625% Senior Notes due 2030 (ISIN: XS2100726160);

xiii.    USD 500,000,000 4.8% Senior Notes due 2030 (ISIN: XS2210960378);

xiv.     USD 500,000,000 3.875% Senior Notes due 2030 (ISIN: XS2240971825); and

xv.      USD 700,000,000 3.3% Senior Notes due 2031 (ISIN: XS2280833307);

c. ***Existing HK Bilateral Loans***: two unsecured bilateral loans governed by Hong Kong Law:

i.       HKD 1,880,000,000 term loan facility agreement dated December 1, 2021, by and between, among others, Country Garden as borrower and Ever Credit Limited as lender; and

ii.      USD 280,000,000 dual currency term loan facility agreement dated December 26, 2022, by and between, among others, Country Garden as borrower and Industrial and Commercial Bank of China (Asia) Limited as facility agent;

d. ***Existing Loans (Onshore Credit Support)***: thirteen bilateral loans, which have the benefit of credit support provided by PRC-incorporated subsidiaries of the Group:

i.       HKD 950,000,000 term loan facility agreement dated March 31, 2023, by and between, among others, Country Garden as borrower and Tai Fung Bank Limited as lender (the "Tai Fung Loan");

8

ii.    The CNY 500,000,000 term loan facility agreement (房地产开发贷款借款合同) dated February 15, 2022 entered into between Baoding Lixu Real Estate Development Co., Ltd. (保定立旭房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Baoding Branch (中国邮政储蓄银行股份有限公司保定市分行) as lender;

iii.   CNY 500,000,000 term loan facility agreement (房地产开发贷款借款合同) dated July 22, 2021 entered into between Cangzhou Bihua Real Estate Development Co., Ltd.(沧州碧华房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd ., Cangzhou Branch (中国邮政储蓄银行股份有限公司沧州市分行) as lender;

iv.    CNY 170,000,000 term loan facility agreement (房地产开发贷款借款合同) dated April 24, 2023 entered into between Tianjin Haichang Property Development Co., Ltd. (天津海昌房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Tianjin Pilot Free Trade Zone Branch (中国邮政储蓄银行股份有限公司天津自由贸易试验区分行) as lender;

v.     CNY 500,000,000 term loan facility agreement (房地产开发贷款借款合同) dated June 22, 2020 entered into between Xiangyang Rongbi Real Estate Development Co., Ltd. (襄阳荣碧房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Xiangyang Branch (中国邮政储蓄银行股份有限公司襄阳市分行) as lender;

vi.    CNY 800,000,000 term loan facility agreement (房地产开发贷款借款合同) dated April 28, 2021 entered into between Wuhan Changhuan Property Co., Ltd. (武汉常欢置业有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Wuhan Branch (中国邮政储蓄银行股份有限公司武汉市分行) as lender;

vii.   CNY 1,000,000,000 term loan facility agreement (房地产开发贷款借款合同) dated November 18, 2022 entered into between Changzhou Borui Real Estate Development Co., Ltd. (常州博瑞房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Changzhou Branch (中国邮政储蓄银行股份有限公司常州市分行) as lender;

viii.  CNY 600,000,000 term loan facility agreement (房地产开发贷款借款合同) dated March 21, 2022 entered into between Weifang

9

Zhuojing Health Technology Co., Ltd. (潍坊市卓景健康科技有限公司) as borrower and Postal Savings Bank of China Co., Ltd (中国邮政储蓄银行股份有限公司潍坊市分行., Weifang Branch) as lender;

ix.  CNY 300,000,000 term loan facility agreement (房地产开发贷款借款合同) dated December 28, 2021 entered into between Suqian Xinyang Real Estate Development Co., Ltd. (宿迁市新洋房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Suqian Branch (中国邮政储蓄银行股份有限公司宿迁市分行) as lender;

x.  CNY 700,000,000 term loan facility agreement (房地产开发贷款借款合同) dated November 15, 2021 entered into between Huzhou Fulan Real Estate Development Co., Ltd. (湖州富澜房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Huzhou Branch (中国邮政储蓄银行股份有限公司湖州市分行) as lender;

xi.  CNY 120,000,000 term loan facility agreement (房地产开发贷款借款合同) dated July 26, 2021 entered into between Yulin Huixiang Real Estate Development Co., Ltd. (玉林市汇享房地产开发有限公司) as borrower and Postal Savings Bank of China Co., Ltd., Yulin Branch (中国邮政储蓄银行股份有限公司玉林市分行) as lender;

xii.  CNY 147,000,000 term loan facility agreement (流动资金借款合同) dated September 19, 2023 entered into between Zhaoqing Biguiyuan Modern Furniture Co., Ltd. (肇庆市现代筑美家居有限公司) as borrower and Guangzhou Bank Co., Ltd., Foshan Jihua Sub-branch (广州银行股份有限公司佛山季华支行) as lender; and

xiii.  CNY 100,000,000 term loan facility agreement (房地产开发贷款借款合同) dated June 16, 2023 entered into between Zhaoqing Biguiyuan Modern Furniture Co., Ltd. (肇庆市现代筑美家居有限公司) as borrower and Guangzhou Bank Co., Ltd., Foshan Jihua Sub-branch (广州银行股份有限公司佛山季华支行) as lender.

### III.  <u>Circumstances Leading to the Restructuring</u>

11.  Since mid-2021, a number of high-profile PRC companies in the real estate sector have experienced difficulties in securing external financing from PRC banks and offshore capital

markets following the COVID-19 pandemic and other macro-economic challenges. The Country Garden Group, like many other companies in the PRC real estate sector, has been negatively affected by this overall downturn in the PRC real estate sector (and the PRC economy as a whole) in the following respects:

12.    *Difficulty raising onshore and offshore financing*: Since mid-2021, the Country Garden Group has been unable to access typical financing channels, such as bank lending and capital markets for equity and debt raises. Reduced bank lending for the real estate sector overall has resulted in reduced access by the Country Garden Group to onshore capital. The Country Garden Group's other businesses have also been adversely affected due to the overall downturn of the real estate industry. Furthermore, adverse reaction to these events by offshore capital markets has limited the Country Garden Group's funding sources to address upcoming maturities on its outstanding indebtedness. The offshore bond market, on which the Country Garden Group heavily relies for refinancing and growth capital, is effectively closed to privately-owned companies in the real estate sector. This difficulty in raising onshore and offshore financing has significantly exacerbated Country Garden's current liquidity pressures.

13.    *Decreased cash flows and liquidity in a deteriorating market*: In light of general tightened government policy, multiple high-profile credit events and deteriorating consumer sentiment in the real estate sector, sales for residential property in China have slowed down significantly. Prices for residential properties have also suffered a substantial reduction and remain depressed in 2025. This market downturn has adversely impacted the Country Garden Group's ability to generate sufficient cash to service its debts in a timely manner and sustain its operations.

14.    *Continued negative impact of the COVID-19 pandemic*: The PRC economy as a whole continues to remain sluggish post-pandemic, which has continued to affect the business

operations of the Country Garden Group in multiple aspects, resulting in, among other things: (a) a slowdown in property sales and a decrease in property sale prices due to poor consumer sentiment as a result of a sustained poor economic outlook; (b) reduced revenues from property management due to continued weakening of consumer demand; and (c) increased difficulty and costs in accessing global capital markets due to overall negative investor sentiment, significant volatility and liquidity disruptions.   While the PRC central and local governments have taken various measures to boost the economy and stimulate local property markets, which led to some gradual recovery in the sector, the overall outlook in the sector is expected to remain challenging throughout 2025.

15.    The confluence of the above factors has (i) resulted in a significant deterioration of the Country Garden Group's financial position, leading to it incurring losses in the last two financial years – approximately RMB 35.145 billion (or USD 4.89 billion) for the year ended December 31, 2024 and RMB 200.962 billion (or USD 27.97 billion) for the year ended December 31, 2023; and (ii) severely affected the Country Garden Group's ability to sustain its existing capital structure.

## A.    Events Leading Up to the Scheme

16.    In light of the difficulties affecting the overall real estate sector, and to improve the financial position of the Country Garden Group, the Country Garden Group's management took certain actions to shore up capital and mitigate the effects of the overall adverse market conditions. These efforts included implementing cost-control measures and minimizing capital expenditures to preserve liquidity for ongoing development of existing property development projects, implementing measures to accelerate pre-sales and sales of properties under development and completed properties, and speeding up the collection of outstanding sales proceeds.   Additionally,

the Country Garden Group is continuing to actively explore potential opportunities for asset disposal to create liquidity.

17.    Despite these efforts however, the overall condition of the real estate sector has reduced both the options and amount of financing available to the Country Garden Group to meet its short-term debt maturities and interest payments (including under the Existing Debt).

**B.    The Restructuring Support Agreement**

18.    As a result of the foregoing, and following a comprehensive consideration of the strategic options available to it, Country Garden believes that formulating a comprehensive restructuring of its offshore indebtedness is the best option for all stakeholders of the Country Garden Group.

19.    Accordingly, Country Garden engaged in extensive negotiations with its major offshore creditors since the first quarter of 2024.  Those negotiations culminated in Country Garden entering into the restructuring support agreement dated April 11, 2025 (the "Restructuring Support Agreement") with an ad hoc group of creditors, who are beneficial owners of the Existing US Public Notes (the "Ad Hoc Group").  Appended to the Restructuring Support Agreement is the restructuring term sheet (the "Term Sheet") which laid out the commercial terms of the restructuring.  Subsequent to the announcement of the Restructuring Support Agreement, Country Garden entered into an amendment to the Restructuring Support Agreement dated on August 18, 2025 to amend the terms of the Restructuring Support Agreement (the "RSA Amendment Agreement") which, *inter alia*, appended a revised Term Sheet.

20.    Country Garden's efforts have culminated in broad support for the Restructuring Support Agreement and the Scheme.  As of September 12, 2025, the following Scheme Creditors have executed or acceded to the Restructuring Support Agreement (collectively holding approximately 72.63% of the aggregate outstanding principal amount of Existing Debt):

a.  holders of the Existing Class 1 Debt representing approximately 59.28% of the aggregate outstanding principal amount of the Existing Class 1 Debt; and

b.  holders of the Existing Class 2 Debt representing approximately 77.00% of the aggregate outstanding principal amount of Existing Class 2 Debt.

## IV.  Overview of the Scheme[4]

### A.  Restructuring Overview

21.    The primary purpose of the Scheme is to enable the implementation of the Restructuring, which is expected to strengthen and "right-size" the Country Garden Group's offshore balance sheet by reducing its offshore debt obligations, providing the Country Garden Group with a longer maturity runway and a stable platform that will also allow it to service its debt obligations, and maximizing value for all stakeholders while ensuring that their rights are adequately protected.

22.    The Scheme contemplates, among other things, the cancellation and discharge of the Existing Debt and the release of all obligors under the Existing Debt ("Existing Debt Obligors") in exchange for Scheme Creditors receiving Scheme Consideration Entitlement, comprising: (i) one or more of the various options set forth below and a contingent value rights instrument (the "Scheme Creditor CVR") and (ii) in respect of the Scheme Creditors holding Existing Class 1 Debt only, certain cash payments and loans described in greater detail below (the "SCA").

23.    In the event that the Scheme fails, Country Garden believes that (i) it will be unable to comply with its obligations under the Existing Debt; (ii) the Country Garden Group will be unable to comply with its obligations under its other outstanding indebtedness; and (iii) there is a material risk that certain Scheme Creditors, as well as other creditors of the Country Garden Group

---

[4]    Capitalized terms used in this section but not otherwise defined shall have the meanings ascribed to them in the Scheme.

would pursue enforcement actions against Country Garden and other members of the Country Garden Group. Under those circumstances, Country Garden believes that an insolvent liquidation is the most likely alternative, which would be value destructive and result in Scheme Creditors receiving significantly lower returns than are anticipated under the Scheme.[5]

### B.    Description of the Scheme and Issuance of New Instruments

24.    As described in further detail in the Counsel Declaration, a scheme of arrangement under applicable Hong Kong law (which closely follows English law) is a compromise or arrangement entered into between a company and its creditors or between a company and its members.  A scheme of arrangement enables a company to enter into an arrangement in respect of its debts or obligations with its creditors, or one or more classes of its creditors.  Under applicable Hong Kong law, a scheme of arrangement is approved by the requisite majorities of the relevant classes of creditors if at least a majority in number and 75% in value of each such class of creditors present and voting at the scheme meeting vote in favor of such scheme.

25.    The effect of the Scheme will be, subject to the terms of the Scheme, to release the claims of the Scheme Creditors against (i) the Debtor as issuer, borrower or guarantor in respect of its obligations under the Scheme Claims and (ii) the issuers, guarantors and security providers of the Existing Debt in respect of their obligations under the Scheme Claims, except that the obligations of the PRC-incorporated obligors under the Existing Loans (Onshore Credit Support) will not be compromised under the Scheme.

---

[5]    As set forth in greater detail in section 5.73 of the Explanatory Statement, based on Kroll's Restructuring Scenario analysis, Scheme Creditors (Class 1) are expected to recover between 21.1% to 53.9% under the Scheme, but only 9.3% to 11.9% in an insolvent liquidation. Scheme Creditors (Class 2) (excluding the Onshore Credit Support which will not be compromised) are expected to recover between 17.7% to 51.0% under the Scheme, but only 2.8% to 6.8% in an insolvent liquidation.

26.     The Scheme provides for certain releases (the "Releases") of claims against Country Garden in respect of the Existing Debt in its capacity as primary obligor, secondary obligor, surety, or otherwise.  All Existing Debt Obligors other than Country Garden will also be released and discharged from their respective obligations (including under any guarantee or security interest) in respect of the Existing Debt, including (i) with respect to the Existing Syndicated Loans, release of claims against the guarantors and arising under security interests over shares of certain of Country Garden's subsidiaries; (ii) with respect to the Existing US Public Notes, the Existing Convertible Bonds, and the Existing HK Bilateral Loans, release of claims against the guarantors and arising under security interests over shares of certain of Country Garden's subsidiaries; and (iii) with respect to the Existing Loans (Onshore Credit Support), release of claims against Country Garden only (collectively, the "Country Garden Group Released Parties").

27.     The Scheme also provides for the release and discharge of the following parties (as defined in the Scheme and, in each case, in its or their stated capacity): (i) the Advisors; (ii) any Director; (iii) the Information Agent; (iv) the Blocked Scheme Creditor Tabulation Agent; (v) the Existing Debt Administrative Parties and their predecessors; (vi) the New Notes Administrative Parties; (vii) the MCB Administrative Parties; (viii) the New Loans Administrative Parties; (ix) the Holding Period Trustee; (x) the Blocked Escrow Agent; and (xi) the AHG, the CoCom and each of their respective Personnel and Affiliates (collectively with the Country Garden Group Released Parties, the "Released Parties"), under or in relation to (a) any step or action, omission or other circumstance occurring on or prior to the Restructuring Effective Date concerning the Existing Debt; and (b) the negotiation, preparation, execution, sanction and/or implementation of the Scheme and/or the Restructuring, including the performance of any step or transaction

16

contemplated by the terms of, without limitation, the Scheme, the Restructuring Steps, the Restructuring Documents, the Restructuring Support Agreement and any other document referred to in any of the foregoing.  Each Release is qualified and does not, for example, release any claims derived from gross negligence, fraud or willful misconduct.

28.    In return, each Scheme Creditor will be entitled to receive certain consideration in accordance with the terms of the Scheme as described below.

   **C.    Scheme Consideration Entitlement**

29.    Subject to the satisfaction of the applicable restructuring conditions, the Scheme Creditors will receive a *pro rata* allocation of the below consideration (the "Scheme Consideration Entitlement").  The Scheme Consideration Entitlement provided to a Scheme Creditor will include (a) one or more of the five options summarized below in accordance with each Scheme Creditor's election and/or allocation, subject to the terms of the Scheme, (b) the Scheme Creditor CVR, and (c) in respect of the Scheme Creditors holding Existing Class 1 Debt only, certain cash payments and loans described in greater detail below (the "SCA").

   a.    ***Option 1***: participation in a tender offer where Country Garden will be entitled to redeem Existing Debt through a "reverse Dutch auction" by which Country Garden will accept a valid offer submitted by a Scheme Creditor (provided that the offer price is no more than USD 100 for every USD 1,000 of Scheme Consideration Claims) in inverse order of the offer price up to the Option 1 cap of USD 200 million.

   b.    ***Option 2***: A series of new zero-coupon mandatory convertible bonds with an aggregate principal amount of up to USD 2.0 billion to be issued by Country Garden with a maturity date of December 31, 2031 following the Reference Date of June 30, 2025, which may be converted into ordinary shares of Country Garden at an initial conversion price of HKD 2.60 per share (the "MCB (A)").

   c.    ***Option 3A***: A combination of MCB (A) and a new series of medium-term notes with a 2.5% *per annum* coupon rate, and an amortization repayment schedule starting from 18 months and ending 90 months after the Reference Date of June 30, 2025 (the "MTN"); or ***Option 3B***: a combination of MCB (A) and a new medium-term loan that mirrors the economic terms of the

17

MTN (the "<u>MTL</u>"). The MTN and MTL shall have an aggregate principal amount of up to USD 2,709,300,000, and MCB (A) shall have an aggregate principal amount of up to USD 5,500,700,000.

d.   ***Option 4A***: A combination of (i) a series of new zero-coupon mandatory convertible bonds to be issued by Country Garden with a maturity of 114 months following the Reference Date of June 30, 2025, which may be converted into ordinary shares of Country Garden at an initial conversion price of HKD 10 per share (the "<u>MCB (B)</u>") and (ii) a new series of long-term notes with a 2.5% *per annum* coupon rate and an amortization repayment schedule starting from 102 months and ending on 114 months after the Reference Date of June 30, 2025 (the "<u>LTN (A)</u>") or ***Option 4B***: a combination of (i) MCB (B) and (ii) a new long-term loan that mirrors the economic terms of the LTN (the "<u>LTL (A)</u>").  The principal amount of the MCB (B), LTN (A), and LTL (A) is not capped.

e.   ***Option 5A***: A new series of long-term notes with a 1% *per annum* coupon rate, and an amortization repayment schedule starting from 126 months and ending on 138 months after the Reference Date of June 30, 2025 (the "<u>LTN (B)</u>"); or ***Option 5B***: a new long-term loan that mirrors the economic terms of the LTN (B) (the "<u>LTL (B)</u>"). The LTN (B) and LTL (B) shall have an aggregate principal amount of up to USD 1.5 billion.

30.   Additionally, Scheme Creditors holding Existing Class 1 Debt will be provided with the SCA in return for agreeing to participate in the Scheme and to compromise their existing rights under the Existing Class 1 Debt.  The SCA comprises of the following:

a.   ***SCA Day 1 Payment***: a *pro rata* cash payment in the aggregate amount of USD 89 million to be paid on or before the Restructuring Effective Date;

b.   ***SCA Loan***: a term loan in the principal amount of USD 89 million to be advanced *pro rata* by each of the Scheme Creditors holding Existing Class 1 Debt on or before the Restructuring Effective Date; and

c.   ***SCA Warrants***: warrants under which the lender of Existing Class 1 Debt will be entitled to subscribe for ordinary shares of Country Garden at an initial strike price of HKD 0.60 per share in exchange for setting-off a corresponding amount owed to it under the SCA Loan.

## V.   <u>Commencement of the Hong Kong Proceeding</u>

31.   On August 15, 2025, the Debtor filed an originating summons with the Hong Kong Court, a copy of which is attached to the Counsel Declaration as Exhibit A, thereby commencing

the Hong Kong Proceeding and seeking, among other things, an order directing the Debtor to convene a meeting for each class of creditors in respect of the Scheme for the applicable Scheme Creditors in Hong Kong.

32.    The hearing to consider the Debtor's request to convene the Scheme Meetings for the applicable Scheme Creditors (the "Convening Hearing") was held before the Hong Kong Court on September 12, 2025.  The AHG, representing approximately 29.9% in value of the Existing US Public Notes, instructed legal representatives to attend the Convening Hearing and made submissions in support of the Scheme and to explain the rationale and quantum of the work fees payable to the ad hoc group. Tai Fung Bank Limited, one of the lenders under the Existing Class 2 Debt (representing approximately 0.8% in value of the Existing Debt) also instructed legal representatives to attend the Convening Hearing. Tai Fung Bank Limited did not oppose Country Garden's application to convene the Scheme Meeting, but wanted to register its concern that there was a risk that the Scheme would have an unintended impact on certain credit support granted by the PRC-incorporated subsidiaries of Country Garden. Country Garden is presently liaising with Tai Fung Bank Limited to address its concerns. No other Scheme Creditors appeared at the Convening Hearing.

33.    Following the Convening Hearing, the Hong Kong Court granted the order (the "Convening Order") scheduling the Scheme Meetings for the Scheme and scheduling the Sanction Hearing.  The Convening Order is attached to the Counsel Declaration as Exhibit C.

34.    On or around October 13, 2025, no less than 21 days in advance of the Scheme Meetings and in accordance with the Convening Order and section 671 of the Companies Ordinance, applicable notices of the Scheme Meetings (the "Scheme Meeting Notices") will be provided:

    a.    by publication on the transaction website https://projects.sodali.com/countrygarden (the "Transaction Website") and through a public announcement published on the HKEX website;

    b.    by Sodali & Co (the "Information Agent") through the Clearing Systems and via email to each person whom the Debtor believes is or may be a Scheme Creditor, and for whom the Information Agent has a valid email address; and

    c.    in respect of the Scheme Creditors that are lenders under certain of the loans of the Debtor or holders of certain notes guaranteed by the Debtor that are not subject to the Clearing Systems, via email to the email address for such Scheme Creditors in accordance with the notice provisions of the underlying finance documents.

35.    In addition, under the Convening Order, the Hong Kong Court authorized and appointed Mat Ng or, if he is unable to act in that capacity, Nigel Trayers to act as the Chairperson for the Scheme Meetings (the "Scheme Chairperson").

36.    As required by the terms of the Convening Order, electronic copies or a link to the Transaction Website (or both) will be provided to Scheme Creditors so that they can view and download the Scheme, the explanatory statement (the "Explanatory Statement") and the applicable solicitation materials, as well as the other documents referred to in the Explanatory Statement. A copy of the Explanatory Statement is attached to the Counsel Declaration as Exhibit C.[6]

37.    The Scheme Meetings will be held on or around November 3, 2025. At the Scheme Meetings, a vote will be held to determine whether each class of Scheme Creditors that is present and voting in person or by proxy approves the Scheme by a majority in number representing at least 75% in value. All applicable Scheme Creditors will have the opportunity to attend, be heard,

---

[6]    The copy of the Explanatory Statement attached to the Counsel Declaration as Exhibit C thereto was the version that was filed with the Hong Kong Court prior to the Convening Hearing on September 12, 2025. The Debtor is continuing to negotiate with its Scheme Creditors to finalize certain commercial terms of the Restructuring, which will result in further changes to the Explanatory Statement. It is anticipated that the Explanatory Statement will be finalized and sent out to the Scheme Creditors on or around October 13, 2025. The Debtor will file the final version of the Explanatory Statement on the docket with this Court along with an appropriate redline to the version attached to the Counsel Declaration as Exhibit D thereof.

and vote at the Scheme Meetings, in person, by authorized representative (if a corporate entity), or
by proxy and to ask questions regarding the respective Hong Kong Scheme.

38.    If the Scheme is approved by the Scheme Creditors, the Debtor will provide notice
to the Scheme Creditors informing them that the Scheme has been approved and that the Sanction
Hearing has been scheduled.  Scheme Creditors will also be informed that they can attend and raise
any issues or objections at the Sanction Hearing.  In anticipation of the Sanction Hearing, the
Scheme Chairperson will file a report on the Scheme Meetings.  The Hong Kong Court will then
decide whether to sanction the Scheme.

39.    If the Hong Kong Court deems it appropriate to enter an order sanctioning the
Scheme following the Sanction Hearing (the "Sanction Order"), the Sanction Order is expected,
among other things, to (i) sanction and approve consummation of the Scheme and (ii) authorize
the Restructuring as set forth in the Scheme.  Upon delivery of the Sanction Order to the Hong
Kong Registrar, and subject to certain additional conditions as set forth in the Explanatory
Statement, the Scheme will become effective and thereby binding on all Scheme Creditors.

40.    The timeline for the Hong Kong Proceeding and this Chapter 15 Case is
summarized below:

| Key Events | Date |
|---|---|
| Convening Hearing | Friday, September 12, 2025 |
| Convening Order | Tuesday, September 16, 2025 |
| Chapter 15 Petition Date | Wednesday, October 1, 2025 |
| Scheme Meetings | On or around Monday, November 3, 2025 |
| Proposed Chapter 15 Recognition Hearing | [Tuesday, November 4, 2025] |
| Sanction Hearing | Thursday, December 4, 2025 |
| Anticipated Restructuring Effective Date | By Wednesday, December 31, 2025 |

## JURISDICTION AND VENUE

41.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334 and the Amended Standing Order of Reference to Bankruptcy Judges of the District Court

for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

42.      Venue is proper in this District pursuant to 28 U.S.C. § 1410 because the Debtor's

principal assets in the United States—a retainer deposited with counsel to the Foreign

Representative that is being held in a New York bank account for the benefit of the Debtor (the

"Retainer Account")—is located in this District.  The Debtor further has intangible property and

property rights within this district in the form of debt instruments that contain a New York

governing law and forum selection clause.

43.      This Chapter 15 Case has been properly commenced pursuant to sections 1504,

1509 and 1515 of the Bankruptcy Code by the filing of the Chapter 15 Petition seeking recognition

of the Hong Kong Proceeding as a foreign main proceeding under section 1515 of the Bankruptcy

Code.  The statutory bases for relief are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520 and

1521 of the Bankruptcy Code.

## RELIEF REQUESTED

44.      The Foreign Representative respectfully requests the entry of the Proposed Order,

substantially in the form attached hereto as **Exhibit A**:

   a.  finding that: (i) the Debtor is eligible to be a "debtor" under chapter 15 of
       the Bankruptcy Code; (ii) the Hong Kong Proceeding is a "foreign main
       proceeding" within the meaning of section 1502(4) of the Bankruptcy Code
       or, in the alternative, a "foreign nonmain proceeding" within the meaning
       of section 1502(5) of the Bankruptcy Code; (iii) the Foreign Representative
       satisfies the requirements of a "foreign representative" under section
       101(24) of the Bankruptcy Code; and (iv) the Chapter 15 Petition was
       properly filed and meets the requirements of section 1515 of the Bankruptcy
       Code;

    b.   granting recognition of the Hong Kong Proceeding as a "foreign main proceeding" or, in the alternative, a "foreign nonmain proceeding" under section 1517 of the Bankruptcy Code;

    c.   granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code; and

    d.   granting related relief.

## I.    The Debtor is Eligible to be a "Debtor" Under Chapter 15 of the Bankruptcy Code

45.    The Debtor qualifies as a "debtor" as that term is defined in section 1502(a)(1) of the Bankruptcy Code because it is an "entity," which includes corporations. *See* 11 U.S.C. §§ 101(15) (definition of "entity," which includes a "person") and 101(41) (definition of "person," which includes a "corporation"). Country Garden is an exempted company with limited liability incorporated under the laws of the Cayman Islands, which is a corporation under Cayman Islands law. *See* Foreign Representative Declaration ¶ 7.

46.    The Debtor has property in the United States for purposes of being eligible under section 109(a) of the Bankruptcy Code, which requires that a debtor must either reside or have a domicile, a place of business or property in the United States. 11 U.S.C. § 109(a); *see Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013) (holding that section 109(a) applies to chapter 15 debtors). Section 109(a) of the Bankruptcy Code neither requires a specific quantum of property in the United States, nor states when or for how long that property must be located within the United States. *See In re Berau Capital Res. Pte. Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Accordingly, courts in this District have required that the debtor have only nominal property in the United States to be eligible to file a chapter 15 case. *See, e.g., In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 293 (Bankr. S.D.N.Y. 2018) ("[C]ourts that have construed the 'property' requirement in Section 109 with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property

located in the United States.") (citation and internal quotation omitted); *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate debtors' bankruptcy proceedings."); *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("There is no statutory requirement as to the property's minimum value.").

47.    Here, the Debtor meets the flexible threshold for having property in the United States as required under section 109(a) because it owns its funds in the Retainer Account held to its account in New York. *See, e.g., In re Poymanov*, 571 B.R. 24, 30 (Bankr. S.D.N.Y. 2017) ("A debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109(a)."); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-374 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that support the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States" and holding that cash in a client trust account maintained by U.S. counsel to the foreign representative satisfied section 109(a)).  Additionally, the Debtor is also an obligor under the Existing US Public Notes, which are governed by New York law.  *C.f. In re Avanti Commc'ns Grp. Plc*, 582 B.R. 603, 613 (Bankr. S.D.N.Y. 2018) (holding that debt documents governed by New York law and containing New York forum selection clauses satisfied the eligibility requirements under section 109(a)); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (same); *Berau*, 540 B.R. at 82-84 (same).  Accordingly, the Debtor is eligible to be a chapter 15 debtor.

II.     **The Hong Kong Proceeding is a Foreign Main Proceeding**

48.     The Hong Kong Proceeding is entitled to recognition as a foreign main proceeding under chapter 15 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides that, subject to section 1506 of the Bankruptcy Code, a court "shall" enter an order granting recognition of a foreign proceeding if: (a) such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code; (b) the foreign representative applying for recognition is a person or body; and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code.  11 U.S.C. § 1517(a); *see* H.R. Rep. No. 109-31, pt. 1, at 113 (2005) ("The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings . . . [t]he requirements of this section . . . are all that must be fulfilled to attain recognition.").  Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1).  Here, all the requirements for recognition of the Hong Kong Proceeding as a foreign main proceeding are satisfied.

A.     **The Hong Kong Proceeding Constitutes a "Foreign Proceeding"**

49.     The Hong Kong Proceeding is a "foreign proceeding" under chapter 15 of the Bankruptcy Code.  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.
>
> 11 U.S.C. § 101(23).

Based on this definition, courts have held that a "foreign proceeding" is one:

a.  in which acts and formalities are set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;

b.  that has either a judicial or an administrative character;

c.  that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors; that is located in a foreign country;

d.  that is located in a foreign country;

e.  that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

f.  in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

g.  that is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525 (Bankr. S.D.N.Y. 2008) (discussing factors).

50.    Courts in this District and elsewhere have previously recognized schemes of arrangement under Hong Kong law and in offshore jurisdictions with analogous English-law based frameworks similar to Hong Kong law as foreign proceedings in chapter 15 cases. *See, e.g.*, *In re Yuzhou Group Holdings Company Limited*, No. 24-11441 (LGB) (Bankr. S.D.N.Y. 2024) (Dkt. No. 29) (recognizing Hong Kong scheme of arrangement); *In re China Aoyuan Group Limited*, No. 23-12030 (JPM) (Bankr. S.D.N.Y. 2024) (Dkt. No. 18) (same); *In re Sunac China Holdings Limited*, No. 23-11505 (PB) (Bankr. S.D.N.Y. 2023) (Dkt. No. 30) (same); *In re Hidili Indus. Int'l Dev. Ltd.*, No. 22-10736 (DSJ) (Bankr. S.D.N.Y. 2022) (Dkt. No. 16) (same); *In re Kaisa Grp. Holdings Ltd.*, No. 16-11303 (SHL) (Bankr. S.D.N.Y. 2016) (Dkt. No. 22) (same); *In re Winsway Enter. Holdings*, No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) (Dkt. No. 13) (same); *In re*

*Shanghai Huaxin Grp. (Hongkong) Ltd.*, No. 19-11482 (JLG) (Bankr. S.D.N.Y. 2019) (Dkt. No.

17) (recognizing Hong Kong provisional liquidation); *In re Atlas Fin. Holdings, Inc.*, No. 22-

10260 (LGB) (Bankr. S.D.N.Y. 2022) (Dkt. No. 18) (recognizing Cayman Islands scheme of

arrangement); *In re RongXingDa Dev. (BVI) Ltd.*, No. 22-10175 (DSJ) (Bankr. S.D.N.Y. 2022)

(Dkt. No. 12) (recognizing BVI scheme of arrangement).

51.     Moreover, the legal framework governing Hong Kong schemes of arrangement is

similar to that governing schemes of arrangement under the laws of the United Kingdom, and such

UK schemes of arrangement are routinely recognized in this District and elsewhere. *See, e.g., In

re Mega Newco Limited*, No. 24-12031 (MEW) (Bankr. S.D.N.Y. 2024) (Dkt. No. 28); *In re NN2

Newco Limited*, No. 19-23277 (RDD) (Bankr. S.D.N.Y. 2019) (Dkt. No. 10); *In re Syncreon

Automotive (UK) Ltd.*, No. 19-11702 (BLS) (Bankr. D. Del. 2019) (Dkt. No. 37); *In re New Look

Secured Issuer plc*, No. 19-11005 (SMB) (Bankr. S.D.N.Y. 2019) (Dkt. No. 14); *In re Noble Grp.

Ltd.*, No. 18-13133 (SMB) (Bankr. S.D.N.Y. 2018) (Dkt. No. 30); *In re Stripes US Holding, Inc.*,

No. 18-12388 (CSS) (Bankr. D. Del. 2018); *In re Lehman Bros. Int'l (Europe) (in administration)*,

No. 18-11470 (SCC) (Bankr. S.D.N.Y. 2018) (Dkt. No. 15); *Avanti*, No. 18-10458 (MG) (Bankr.

S.D.N.Y. 2018) (Dkt. No. 15); *In re Bibby Offshore Servs. Plc*, No. 17-13588 (MG) (Bankr.

S.D.N.Y. 2018) (Dkt. No. 16); *In re Metinvest B.V.*, No. 17-10130 (LSS) (Bankr. D. Del. 2017)

(Dkt. No. 19); *In re DTEK Fin. (plc)*, No. 16-13521 (SHL) (Bankr. S.D.N.Y. 2017) (Dkt. No. 15);

*In re EnQuest PLC*, No. 16-12983 (MEW) (Bankr. S.D.N.Y. 2016) (Dkt. No. 14); *In re Abengoa

Concessions Inv. Ltd.*, No. 16-12590 (KJC) (Bankr. D. Del. 2016) (Dkt. No. 19); *In re YH Ltd.*,

No. 16-12262 (SCC) (Bankr. S.D.N.Y. 2016) (Dkt. No. 14); *In re Codere Fin. (UK) Ltd.*, No. 15-

13017 (JLG) (Bankr. S.D.N.Y. 2015) (Dkt. No. 16); *In re Towergate Fin. Plc*, No. 15-10509

(SMB) (Bankr. S.D.N.Y. 2015) (Dkt. No. 16).

52.     The Hong Kong Proceeding also satisfies all of the elements of the definition of a "foreign proceeding" under the Bankruptcy Code as evidenced by the facts set forth in the Foreign Representative Declaration and the Counsel Declaration.

53.     First, the Hong Kong Proceeding is commenced pursuant to sections 670, 673 and 674 of the Companies Ordinance, which provides the statutory basis for schemes of arrangement in Hong Kong, and which provisions are used in a restructuring context.  *See* Counsel Declaration ¶ 3.  For purposes of chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice."  *Betcorp*, 400 B.R. at 278.

54.     Second, the Hong Kong Proceeding is "judicial" as it was commenced before the Hong Kong Court and thereafter is subject to the supervision of the Hong Kong Court. *See* Counsel Declaration ¶ 17.  The Hong Kong Court entered the Convening Order to commence the Hong Kong Proceeding, and the Scheme must be approved by the Hong Kong Court for it to be effective. *See id*.  Therefore, the Hong Kong Proceeding is a "judicial" proceeding.  *See Avanti*, 582 B.R. at 613 (finding that an English proceeding "is a judicial proceeding—it required the Convening Order to convene the debtor's scheme meeting and required the Sanction Order for the scheme to be sanctioned, each issued by the UK Court."); *see also In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3rd Cir. 2013) (a proceeding is judicial when a "[c]ourt exercises its supervisory powers.").

55.     Third, the Hong Kong Proceeding is collective in nature, as it affects all Scheme Creditors and requires approval by a majority in number of each class of voting Scheme Creditors

28

representing at least 75% in value of the respective Scheme Claims that have voted in each such class of creditors in order for the Scheme to proceed. *See* Counsel Declaration ¶ 15. The Scheme is intended to benefit creditors based on their collective rights, rather than to benefit any single creditor alone. *Id*. Accordingly, the Scheme is collective in nature. *See Betcorp*, 400 B.R. at 281 (a proceeding is collective where it "considers the rights and obligations of all creditors" in contrast to a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor").

56.    Fourth, the Hong Kong Proceeding is being administered by the Hong Kong Court located in a foreign jurisdiction, namely Hong Kong. *See* Counsel Declaration ¶ 3.

57.    Fifth, as described above, sections 670, 673 and 674 of the Companies Ordinance are provisions of Hong Kong law that enable, among other things, the adjustment of debt, as contemplated by the Scheme, that the Debtor is seeking to have approved by the Hong Kong Court in the Hong Kong Proceeding. Therefore, the Hong Kong Proceeding is conducted under a law related to insolvency or the adjustment of debt. *See In re Millard*, 501 B.R. 644, 649-50 (Bankr. S.D.N.Y. 2013) ("[t]he words 'under a law relating to insolvency or adjustment of debt' [in section 101(23)] emphasize that chapter 15 is available not only to debtors that are technically insolvent or facing liquidation, but also to debtors who are in financial distress and may need to reorganize.").

58.    Sixth, pursuant to the Companies Ordinance, the Debtor's assets and affairs are subject to the supervision of the Hong Kong Court during the pendency of the Hong Kong Proceeding. *See* Counsel Declaration ¶ 17.

59.    Seventh, the objective of the Hong Kong Proceeding is reorganization, as the Hong Kong Proceeding will enable the Debtor to deleverage its balance sheets through a holistic

29

restructuring of its debt obligations.  *See* Counsel Declaration ¶ 11; *see Overnight*, 385 B.R. at

533-34 (recognizing a "financial restructuring" as a "reorganization" for purposes of the sections

101(23) and 1517 analysis).

60.     Accordingly, the Foreign Representative respectfully requests that the Court finds

that the Hong Kong Proceeding constitutes a "foreign proceeding."

### B.     The Hong Kong Proceeding is a "Foreign Main Proceeding"

61.     Under section 1502(4) of the Bankruptcy Code, the term "foreign main proceeding"

means "a foreign proceeding pending in the country where the debtor has its COMI."  *See, e.g., In*

*re Modern Land (China) Co.*, 641 B.R 768, 781 (Bankr. S.D.N.Y. 2022) (recognizing foreign main

proceeding); *Ocean Rig*, 570 B.R. at 702 (same); *In re Suntech Power Holdings Co.*, 520 B.R.

399, 416-17 (Bankr. S.D.N.Y. 2014) (same); *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir.

2013) (affirming recognition of foreign main proceeding).

62.     The Bankruptcy Code does not expressly define COMI, though it provides that, in

the absence of evidence to the contrary, a debtor's registered office is presumed to be its COMI.

*See* 11 U.S.C. § 1516(c); *see also In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y.

2012); *In re Tri-Continental Exch.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) ("In effect, the

registered office . . . is evidence that is probative of, and that may in the absence of other evidence

be accepted as proxy for, 'center of main interest.'").

63.     While section 1516 of the Bankruptcy Code creates a presumption that a debtor's

registered office (place of incorporation) is its COMI, that presumption may be rebutted by

contrary evidence.  *See id*. § 1516(c).  Section 1516(c) "creates no more than a rebuttable

evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition." *In*

*re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335

(S.D.N.Y. 2008).  Notwithstanding that the Debtor is incorporated in the Cayman Islands, the facts

set forth herein and in the Supporting Declarations rebut the presumption of COMI in that jurisdiction. *See* Foreign Representative Declaration ¶¶ 51-65.

64.     Courts consider a variety of factors when assessing COMI including, "the location of the debtor's headquarters; the location of those who actually manage the debtor […] the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Modern Land*, 641 B.R. at 782 (quoting *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). In *Modern Land*, this Court noted that "consideration of these specific factors is neither required nor dispositive." *Id.* Further, in *SphinX*, this Court explained that these factors should not be applied "mechanically" and "[i]nstead, they should be viewed in light of Chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *SphinX, Ltd.*, 351 B.R. at 117.

65.     The Second Circuit has underscored the importance of criteria that are both objective and ascertainable to third parties to determine a debtor's COMI. *See Fairfield Sentry*, 714 F.3d at 137. Whether a third party could objectively ascertain a debtor's COMI may be determined "by examining factors 'in the public domain.'" *Id*. The *SphinX* court stressed that "because their money is ultimately at stake, one generally should defer […] to the creditors' acquiescence in or support of a proposed COMI." *SphinX, Ltd.*, 351 B.R. at 117. In assessing these "factors in the public domain," a court will look at "activities at or around the time the chapter 15 petition is filed[.]" *Id.*

66.     In three recent analogous chapter 15 cases, this Court determined that the COMI of a debtor was located in Hong Kong, notwithstanding that the debtor was a holding company incorporated in the Cayman Islands or the British Virgin Islands with subsidiaries that mostly

operated property development businesses in mainland China.  *See In re Yuzhou Group Holdings Company Limited*, No. 24-11441 (LGB) (Bankr. S.D.N.Y. 2024); *In re China Aoyuan Group Limited*, No. 23-12030 (JPM) (Bankr. S.D.N.Y. 2024) (Dkt. No. 18); *In re Sunac China Holdings Limited*, Case No. 23-11505 (PB) (Bankr. S.D.N.Y. Nov. 17, 2023) (ECF No. 30).  The *Yuzhou*, *China Aoyuan* and *Sunac* courts correctly applied the five factors identified in *Fairfield Sentry* and considered the ascertainability of the debtor's COMI to creditors and third parties and held that the evidence established a sufficient factual record to rebut the presumption that the debtor's COMI was located in the Cayman Islands or the British Virgin Islands, as applicable.

67.     Applying this criteria and for the reasons set forth below, the Debtor maintains its COMI in Hong Kong, rather than the jurisdiction of its registered office.

### C.     The Location of the Country Garden's COMI is in Hong Kong

#### 1.     Location of Country Garden's Headquarters

68.     Although Country Garden is incorporated under the laws of the Cayman Islands, Country Garden does not conduct business in the Cayman Islands.  *See* Foreign Representative Declaration ¶ 56.  Country Garden's shares are publicly listed on the HKEX, and it is registered as a non-Hong Kong company in Hong Kong under Part XI of the Companies Ordinance.  *Id*. Country Garden's physical headquarters and principal place of business are located at Suite 1702, Dina House, Ruttonjee Centre, 11 Duddell Street, Central, Hong Kong.  *Id*.  Accordingly, Country Garden's headquarters are located in Hong Kong, which supports the conclusion that Country Garden's COMI is in Hong Kong.

#### 2.     Location of Those Who Actually Manage Country Garden

69.     When determining the "location of those who actually manage the debtor," courts apply a flexible analysis of where a debtor is managed.  *See In re Serviços de Petróleo*

*Constellation S.A.*, 600 B.R. 237, 273 (Bankr. S.D.N.Y. 2019) (finding that location of management analysis should be "flexible" and reflect the realities of a particular business).

70.    Country Garden is the ultimate parent of the Country Garden Group and its principal business activities have been limited to (i) holding equity in the intermediate parent of the Country Garden Group, Smart World Development Holdings (the "<u>Intermediate Parent</u>"), which holds the equity of Country Garden Group's onshore and offshore subsidiaries, (ii) raising debt capital, and (iii) more recently, restructuring its Existing Debt.  *See* Foreign Representative Declaration ¶ 57.  Additionally, Country Garden's restructuring activities, which have constituted Country Garden's principal business activities since October 2023, have been conducted primarily in Hong Kong.  *Id*.  Country Garden's restructuring efforts have been conducted by a management team of individuals, some of whom live and work in Hong Kong. *Id*.  Almost all meetings at which significant decisions relating to Country Garden's restructuring were made have been held in Hong Kong, and key members of Country Garden's Board of Directors have attended a majority of these meetings in person in Hong Kong.

71.    Country Garden's professional advisors advising on the restructuring are and have been based primarily in Hong Kong.  *Id* ¶ 61.  Most of the in-person meetings to negotiate commercial terms of the restructuring between Country Garden and its creditor groups have taken place in Hong Kong.  *Id.*  The principal representatives of the creditors participating in the restructuring are also predominantly located in Hong Kong.  *Id*.  Where, as here, a debtor's activities as of the chapter 15 petition date include restructuring activities and administrative functions, the Second Circuit has directed that those activities should be considered in the COMI

analysis. *See Fairfield Sentry*, 714 F.3d at 137.[7]   Accordingly, the facts support a finding that those who actually manage Country Garden are located in Hong Kong.

### 3.   Location of Country Garden's Primary Assets

72.     Country Garden's primary assets are its equity investments in the Intermediate Parent and Cayman-incorporated Country Garden Finance Holdings Company Limited.   Country Garden's holdings in the Intermediate Parent and Country Garden Finance Holdings Company Limited, as well as all of the Intermediate Parent's and Country Garden Finance Holdings Company Limited's holdings in its subsidiaries, as applicable, are in the form of certificated securities which are physically held in Hong Kong at its address in Hong Kong.   *See* Foreign Representative Declaration ¶ 59.   Country Garden's other main assets comprise receivables representing intercompany debts owed by other entities in the Country Garden Group.   *Id.*   As a matter of Hong Kong law, these receivables would be deemed to be located in Hong Kong.   *Id*.   Country Garden also owns certain bank accounts that are situated in Hong Kong.   *Id.*   Country Garden does not have assets in the Cayman Islands.   *Id*.   Accordingly, Country Garden's primary assets are located in Hong Kong.

### 4.   Location of a Majority of Country Garden's Creditors

73.     A significant number of Country Garden's key creditors affected by the Restructuring (comprising members of the Ad Hoc Group and the coordinating committee of banks under the Existing Syndicated Loans) are located in, or have connections to, Hong Kong.   The financial and legal advisors engaged by those creditors in connection with the Restructuring are also primarily located in Hong Kong.   At least 37.1% (by value) of Scheme Creditors are either

---

[7]     In *Fairfield Sentry*, the Second Circuit affirmed a determination that the debtor's COMI was the BVI, where its foreign proceeding was pending because, in large part, the debtor's activities at the time of the chapter 15 petition were conducted in connection with management of the debtor's business under BVI insolvency law.   *Id*. at 138.

located in Hong Kong or managed from Hong Kong,[8] with no other location having a higher percentage (by value) of participating Scheme Creditors. *Id.* ¶ 61. Accordingly, a significant proportion of affected creditors and their advisors are located in Hong Kong.

### 5.   Jurisdiction Whose Law Would Apply to Most Disputes

74.     The laws governing the debt being restructured as part of the Scheme are New York law, English law, PRC law, and Hong Kong law. None of the debt being comprised as part of the Scheme is governed by Cayman Islands law. As noted above, Country Garden maintains a principal place of business in Hong Kong, and therefore must submit to Hong Kong law. *Id.* ¶ 62. Furthermore, because Country Garden's shares are listed on HKEX, Country Garden must submit to the jurisdiction of the Hong Kong Securities and Futures Commission. Further, the Restructuring Support Agreement are governed by Hong Kong law. Finally, the Scheme Meetings will occur in Hong Kong, and the Hong Kong Court is overseeing the Scheme by conducting the Convening Hearing and the Sanction Hearing in Hong Kong. *Id.* Therefore, many, if not most, disputes with Country Garden would have a nexus to Hong Kong and will therefore be subject to Hong Kong law.

### 6.   The Ascertainability of Country Garden's COMI in Hong Kong

75.     The Restructuring Support Agreement specifically contemplated the commencement of the Scheme in Hong Kong. *Id.* ¶ 64. Moreover, holders of approximately 72.63% of the aggregate outstanding principal amount of the Existing Debt have executed the Restructuring Support Agreement and support the Scheme. *Id.* No Scheme Creditor has raised issues about the propriety of Hong Kong as the COMI of Country Garden or about any actions of management in proffering a Hong Kong COMI and establishment in Hong Kong. *Id.* The recent

---

[8]     Based on information available to Country Garden from accessions to the Restructuring Support Agreement or Scheme Creditors otherwise identifying themselves to Country Garden.

restructuring activities of Country Garden in Hong Kong with its creditors located in Hong Kong and elsewhere and the fact that most of those creditors consent to the Restructuring further supports a finding that Country Garden's COMI is located in Hong Kong.

76.     Consequently, the presumption that Country Garden's COMI is the location of its registered office in the Cayman Islands is rebutted by contrary evidence, and therefore Country Garden's COMI is located in Hong Kong. *See, e.g., In re Yuzhou Group Holdings Company Limited*, No. 24-11441 (LGB) (Bankr. S.D.N.Y. 2024) (Dkt. No. 29) (granting recognition of a Hong Kong proceeding concerning a company incorporated in the Cayman Islands as a foreign main proceeding)*; In re China Aoyuan Group Limited*, No. 23-12030 (JPM) (Bankr. S.D.N.Y. 2024) (Dkt. No. 18) (same); *In re Sunac China Holdings Limited*, Case No. 23 11505 (PB) (Bankr. S.D.N.Y. 2023) (Dkt. No. 30) (same); *In re Kaisa Grp. Holdings Ltd.*, No. 16-11303 (SHL) (Bankr. S.D.N.Y. 2016) (Dkt. No. 15) (same); *In re Dingway Investment Limited*, No. 22-10648-BKC-LMI (Bankr. S.D. Fla. 2022) (Dkt. No. 14) (granting recognition of a Hong Kong proceeding concerning a company incorporated in the BVI as a foreign main proceeding).

77.     Accordingly, the Court should find that the COMI of the Debtor is located in Hong Kong, and the Hong Kong Proceeding is a "foreign main proceeding" that could be recognized along with each Scheme.

### D.     In the Alternative, the Hong Kong Proceeding is a "Foreign Nonmain Proceeding"

78.     In the event that the Hong Kong Proceeding was held not to be a "foreign main proceeding," this Court should, in the alternative, recognize the Hong Kong Proceeding as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.  11 U.S.C. § 1502(5).   Under Section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign nonmain proceeding if it is pending in a country where the debtor has an

"establishment"  *See* 11 U.S.C. § 1517(b)(2).  Section 1502 of the Bankruptcy Code defines an

"establishment" as "any place of operations where the debtor carries out a nontransitory economic

activity." *See* 11 U.S.C. § 1502(2).  The "establishment" requirement is satisfied by conducting

business locally.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,*

*Ltd.*, 374 B.R. 122, 126-27 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

79.     Country Garden conducts pertinent economic activity locally (in Hong Kong) as

the ultimate holding company of the Country Garden Group and is registered to do business in

Hong Kong.  Country Garden has its shares listed publicly on the HKEX, and continues to conduct

substantial restructuring activities in Hong Kong that affect creditors located in, or that have

connections to, Hong Kong.  *See* Foreign Representative Declaration ¶ 64.  Accordingly, to the

extent that this Court finds that the Hong Kong Proceeding is not a "foreign main proceeding," the

Court should find that the Debtor has an "establishment" in Hong Kong under section 1502(2) of

the Bankruptcy Code and recognize the Hong Kong Proceeding as a "foreign nonmain proceeding"

as defined in section 1502(5) of the Bankruptcy Code.

**III.     The Foreign Representative Satisfies the Requirements of a "Foreign
        Representative" under Section 101(24) of the Bankruptcy Code**

80.     For recognition under chapter 15, a foreign proceeding must also have a foreign

representative.  *See* 11 U.S.C. § 1517(a)(2).  The Foreign Representative respectfully submits that

this Chapter 15 Case was commenced by a duly appointed and authorized "foreign representative"

within the meaning of section 101(24) of the Bankruptcy Code.  Section 101(24) of the Bankruptcy

Code provides as follows:

> The term "foreign representative" means a person or body, including
> a person or body appointed on an interim basis, authorized in a
> foreign proceeding to administer the reorganization or the
> liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

11 U.S.C. § 101(24)

81.    The Debtor has commenced its Hong Kong Proceeding, and the Board of Directors of the Debtor has approved the appointment of Fong Ching Lam as the Foreign Representative. *See* Foreign Representative Declaration ¶ 46.  Thus, Fong Ching Lam has met the requirements of section 101(24) of the Bankruptcy Code and is the "foreign representative" of the Debtor as defined thereunder.  *In re Cell C Proprietary Ltd.* 571 B.R. 542, 553 (Bankr. S.D.N.Y. 2017) (recognizing that "a board of directors may authorize a person to act as the corporation's foreign representative in a chapter 15 proceeding"); *see also In re OAS S.A.*, 533 B.R. 83, 98 (Bankr. S.D.N.Y. 2015) (holding that individual appointed by board qualified as a "foreign representative"); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, No. 10-14182 (MG), 2010 WL 10063842 at *2 (Bankr. S.D.N.Y. Nov. 8, 2010) (same).

**IV.    The Petition was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code**

82.    The Foreign Representative duly and properly commenced this Chapter 15 Case in accordance with sections 1504 and 1509 of the Bankruptcy Code, which require the filing of a petition for recognition under section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1504, 1509(a).    In accordance with section 1515(b)(1) of the Bankruptcy Code, the Foreign Representative attached to the Form of Voluntary Petition a certified copy of the Convening Order commencing the Hong Kong Proceeding and board resolutions appointing Fong Ching Lam as Foreign Representative with respect thereto.  In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative also submitted a declaration attached to the Form of Voluntary Petition containing a statement identifying all known pending "foreign proceedings" with respect to the Debtor.  Accordingly, the requirements of section 1515 have been satisfied with respect to the Chapter 15 Petition.

## V.    The Debtor is Entitled to Automatic Relief under Section 1520 of the Bankruptcy Code

83.    Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign main proceeding, including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and its property located within the territorial jurisdiction of the United States. *See* 11 U.S.C. 1520(a).  Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representative respectfully submits that no further showing is required in respect of a Hong Kong Proceeding to the extent the Court recognizes such Hong Kong Proceeding as a foreign main proceeding.

## NOTICE

84.    Notice of the Chapter 15 Petition has been provided to: (i) the United States Trustee for the Southern District of New York; (ii) the Scheme Creditors; (iii) all persons or bodies authorized to administer foreign proceedings of the Debtor, (iv) all known creditors and contract counterparties in the US, if any, (v) all parties to litigation pending in the US to which the Debtor was a party at the time of the filing of this Chapter 15 Case, if any; and (vi) all parties that have filed a notice of appearance in this Chapter 15 Case (collectively, the "Notice Parties").  The Foreign Representative submits that no other or further notice of the Chapter 15 Petition is necessary or required.

## NO PRIOR REQUEST

85.    No prior request for the relief sought in the Chapter 15 Petition has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 1, 2025                Respectfully submitted,
      New York, New York

By:   */s/ Christopher J. Hunker*
       Christopher J. Hunker
       Clark L. Xue
       Matthew J. Bopp
       LINKLATERS LLP
       1290 Avenue of the Americas
       New York, NY  10105
       Telephone: (212) 903-9000

       *Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Country Garden Holdings Company Limited,[1] | Case No. 25-12175 (PB) |
| Debtor in a Foreign Proceeding. | |

## STATEMENT OF VERIFICATION

Pursuant to 28 U.S.C. § 1746, Fong Ching Lam hereby declares as follows under penalty of perjury:

1.     I am a Deputy General Manager of Country Garden Holdings Company Limited, and I am the duly authorized foreign representative of Country Garden Holdings Company Limited.  I am duly authorized to file the Chapter 15 Petition and to commence and act in this chapter 15 case.

2.     I have read the Chapter 15 Petition and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

3.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 1, 2025

                                                    /s/ Fong Ching Lam
                                                    Fong Ching Lam
                                                    Deputy General Manager of
                                                    Country Garden Holdings Company Limited

---

[1]    Country Garden Holdings Company Limited's company registration number is 177345, and the location of its registered office is Conyers Trust Company (Cayman) Limited, Cricket Square, Hutchins Drive, P.O. Box 2681, George Town, Grand Cayman KY1-1111, Cayman Islands.