Christopher J. Hunker
Clark L. Xue
Matthew J. Bopp
**LINKLATERS LLP**
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Country Garden Holdings Company Limited,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-12175 (PB) |

### DECLARATION OF RICHARD M. WOODWORTH
### AS HONG KONG COUNSEL IN SUPPORT OF VERIFIED
### PETITION UNDER CHAPTER 15 FOR RECOGNITION
### OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF

I, Richard Mark Woodworth, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows to the best of my knowledge, information and belief:

### INTRODUCTION

1. I am a solicitor duly admitted to practice in the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") and a partner in the Restructuring and Insolvency practice of the law firm Linklaters located at 11th Floor, Alexandra House, 18 Chater Road, Central, Hong Kong SAR ("Linklaters"). Linklaters is acting as Hong Kong counsel to Country Garden Holdings Company Limited, an exempted company with limited liability

---

[1] Country Garden Holdings Company Limited's company registration number is 177345, and the location of its registered office is Conyers Trust Company (Cayman) Limited, Cricket Square, Hutchins Drive, P.O. Box 2681, George Town, Grand Cayman KY1-1111, Cayman Island.

incorporated under the laws of the Cayman Islands on November 10, 2006 with company number 177345 (the "Debtor"). I submit this declaration (the "Declaration") in support of: (a) the *Chapter 15 Petition for Recognition of a Foreign Proceeding* for the Debtor (the "Petition") and (b) the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Verified Petition," and together with the Petition, the "Chapter 15 Petition"), each filed contemporaneously herewith.[2]

2.  I am over the age of 18 and, if called upon to testify, could and would testify competently to all facts and matters set forth in this Declaration. The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge, and belief. In preparing this Declaration, I reviewed the final form drafts of: (a) the Chapter 15 Petition; (b) copies of the scheme documents in connection with the Hong Kong Proceeding (as defined herein), including (i) the Originating Summons, (ii) the Convening Order, and (iii) the Explanatory Statement (each as defined below and attached hereto as **Exhibits A** through **C**, respectively) for the Debtor; and (c) the relevant provisions of Hong Kong Companies Ordinance (Cap. 622 of the Laws of Hong Kong) (the "Companies Ordinance") as they relate to this Declaration.

3.  As of the date hereof, the Debtor is the subject of a proceeding in Hong Kong entitled *In the Matter of Country Garden Holdings Company Limited* (Case Number HCMP 1366 / 2025) (the "Hong Kong Proceeding") currently pending before the High Court of the Hong Kong Special Administrative Region Court of First Instance (the "Hong Kong Court") concerning a scheme of arrangement (the "Scheme") between the Debtor and those persons defined in the Scheme as

---

[2] Capitalized terms used in this Declaration but not defined herein shall have the meanings ascribed to them in the Verified Petition. Reference is made to the *Declaration of Fong Ching Lam in Support of Verified Petition under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Foreign Representative Declaration"), filed contemporaneously herewith.

2

"Scheme Creditors" (the "Scheme Creditors"), pursuant to sections 670, 673, and 674 of the Companies Ordinance (Cap. 622).

4. This Declaration comprises matters that are statements of my view of Hong Kong law or statements of fact. Where the matters stated in this Declaration are statements regarding Hong Kong law, such statements represent my view of Hong Kong law as a solicitor admitted and authorized to practice in Hong Kong. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, I believe them to be true. Where the matters stated in this Declaration are statements of fact that are not within my personal knowledge, they are derived, as appropriate, from documents maintained by the Registrar of Companies appointed under the Companies Ordinance (the "Hong Kong Registrar"), from the records maintained by Linklaters as a result of advising the Debtor in connection with the Scheme, or from information supplied or confirmed to me by the officers, directors, employees or professionals retained by the Debtor, and are true to the best of my knowledge, information, and belief.

**PERSONAL BACKGROUND AND QUALIFICATIONS**

5. I received my Bachelor of Laws degree from Churchill College, University of Cambridge in 2002 and my Postgraduate Certificate in Laws from City University of Hong Kong in 2004. I qualified to practice law in Hong Kong (as a solicitor) in 2006 and in England and Wales (as a solicitor) in 2007.

6. My practice, in my 18 years since qualification, has focused on cross-border restructurings, insolvency, and workouts of distressed companies. My clients have included leading financial institutions, insolvency office holders, official and unofficial creditors' committees, private equity sponsors, hedge funds, directors, trustees, shareholders and corporate

3

debtors, and my work has included matters across Asia, including the People's Republic of China, Hong Kong, Vietnam, Indonesia, Japan, Korea, Singapore, among others.

7. Although I am not admitted in the United States, I am generally familiar with recognition proceedings arising under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") as a consequence of my involvement with other schemes of arrangement involving companies that have had New York law governed debt and considered proceedings under Chapter 15 of the Bankruptcy Code.

## STATEMENTS OF HONG KONG LAW AND PRACTICE

### I. Hong Kong Legal System

8. From July 1, 1997, the Hong Kong Court of Final Appeal became the highest appellate court in Hong Kong (except for certain matters which can be referred to the Standing Committee of the National People's Congress of the People's Republic of China (the "PRC"), but which are not relevant to this Chapter 15 Case). This was in place of the Privy Council of the United Kingdom, which was the highest appellate court for Hong Kong prior to the PRC's resumption of exercise of sovereignty over Hong Kong on July 1, 1997. Decisions of the Privy Council or the Supreme Court of the United Kingdom (formerly, the Appellate Committee of the House of Lords) are of persuasive authority only.

9. The legislative regimes applicable to schemes of arrangement in England and Hong Kong are similar in nature. Notably, Part 13, Division 2 of the Companies Ordinance and Part 26 of the Companies Act 2006 of England and Wales (the "Companies Act") are similar to provisions in the Companies Ordinance analogous to those of the Companies Act. The primary difference is that section 674 of the Companies Ordinance has different provisions for voting majorities in the

4

context of a takeover offer. Those provisions are not relevant to the debt restructuring of the Debtor.

10. To the extent Hong Kong case law exists in relation to schemes of arrangement, the Hong Kong courts are bound by such case law. The Hong Kong courts may also be guided by English case law as persuasive authority due to the similarities between the two legislative regimes and the nature and treatment of English jurisprudence in Hong Kong. This is recognized by Article 84 of the Basic Law of Hong Kong, which is a constitutional document for Hong Kong.

**II.     Overview of Hong Kong Law Governing the Hong Kong Proceeding**

11. The Debtor is seeking to utilize a scheme of arrangement under the Companies Ordinance to restructure its debt to avoid being placed into a potentially value-destructive liquidation process.

12. A scheme of arrangement is a court-supervised arrangement between a company and its members or its creditors (or classes thereof). A scheme of arrangement enables a company to enter into an arrangement or compromise in respect of its debts or obligations with its creditors, or one or more classes of its creditors. One of the main advantages of a scheme of arrangement for companies and their creditors in a context where holdout creditors seek an advantage against similarly situated creditors during debt restructuring negotiations is that companies may obtain court approval to implement a scheme of arrangement without approval from 100% of the affected creditors. As schemes of arrangement can bind both dissenting secured and dissenting unsecured creditors and can also be used to release claims against other obligors, they offer an alternative to a potentially value-destructive liquidation process.

13. In accordance with the Companies Ordinance, the scheme of arrangement process involves one or more meetings of each of the relevant classes of creditors whose rights are to be

5

affected by the scheme of arrangement. Such meetings are convened by the Hong Kong Court at the "convening hearing," held upon the filing of an *ex parte* originating summons to commence the scheme of arrangement process. Creditors whose rights are not so dissimilar as to make it impossible for them to consult together with a common interest may be convened to the same "scheme meeting." At the convening hearing, the Hong Kong Court typically sets a date for the hearing for the sanctioning of the scheme, referred to as the "sanction hearing."

14. A notice of the scheme meeting is provided to creditors in the manner directed by the Hong Kong Court at the convening hearing. The notice of scheme meeting is accompanied by access to an explanatory statement which includes all information reasonably necessary to allow scheme creditors to make an informed decision on the scheme of arrangement. The explanatory statement includes, among other things, information regarding the company and its financial position, the proposals under the scheme of arrangement, the affected creditors, the constitution of the creditor class or classes, the scheme meeting or meetings, voting, and guidance on how scheme creditors may participate in the scheme of arrangement. I understand that an explanatory statement serves a similar purpose to the disclosure statement required under section 1125 of the Bankruptcy Code for solicitation of votes on a plan of reorganization under Chapter 11 of the Bankruptcy Code.

15. For the Hong Kong Court to sanction a scheme of arrangement, the scheme of arrangement must be approved by a majority in number, representing at least 75% in value, of the creditors present and voting in person or by proxy at each scheme meeting convened to approve the scheme of arrangement. A creditor is entitled to attend and vote at the scheme meeting in person (or, if a corporate entity, by an authorized representative) or appoint a proxy to vote on its behalf.

16. Notably, a scheme of arrangement is a collective proceeding. If the requisite statutory voting majorities are obtained and the Hong Kong Court approves the scheme of arrangement, then the terms of the scheme of arrangement become binding on all members of the relevant class or classes of creditors as a matter of Hong Kong law, whether or not a creditor voted in favor of it.

A. *Role of the Hong Kong Court*

17. The Hong Kong Court's role in the scheme of arrangement process is not to assess the commercial benefits of the proposal. Once the requisite majorities are achieved at the scheme meeting(s), the Hong Kong Court will usually consider the creditors to be the best judge of their own commercial interests. Nevertheless, the Hong Kong Court is not simply a "rubber stamp," and instead plays an active role in the scheme of arrangement process, retaining discretion as to whether or not to sanction the scheme of arrangement. In considering whether or not it should exercise such discretion, the Hong Kong Court will apply the test set out by the Court of First Instance in Hong Kong:

> In considering whether to sanction a scheme, the Court applies some well-established principles which were recently restated in *Re China Singyes Solar Technologies Holdings Ltd* [2020] HKCFI 467; [2020] HKCLC 379 1 such that the Court would consider in particular the following: (1) whether the scheme is for a permissible purpose; (2) whether creditors who were called on to vote as a single class had sufficiently similar legal rights such that they could consult together with a view to their common interest at a single meeting; (3) whether the meeting was duly convened in accordance with the Court's directions; (4) whether creditors have been given sufficient information about the scheme to enable them to make an informed decision on whether or not to support it; (5) whether the necessary statutory majorities have been obtained; (6) whether the Court is satisfied in the exercise of its discretion that an intelligent and honest man acting in accordance with his interests as a member of the class within which he voted might reasonably approve the scheme; and (7) in an international case, whether there is sufficient connection between the scheme and Hong Kong, and whether the scheme is effective in other relevant jurisdictions.

*Re China Bozza Development Holdings Ltd* [2023] HKCFI 1620, ¶12.

7

18. Accordingly, the Hong Kong Court will need to satisfy itself that the required procedure has been followed. For example, the Hong Kong Court will confirm that all necessary disclosures have been made, that all notices were sent as required, that the scheme meeting(s) were properly constituted (including that the classes were properly identified), and that other technical and procedural requirements have been satisfied. Additionally, the Hong Kong Court will need to: (i) be satisfied that scheme creditors are properly classified such that scheme creditors within a class must have sufficiently similar legal rights so that they can consult one another with a view to their common interest at the same scheme meeting; (ii) be satisfied that the scheme of arrangement is one that an intelligent and honest person acting in accordance with his interests as a member of the class within which that person voted might reasonably approve; (iii) consider whether there is sufficient connection between the scheme of arrangement and Hong Kong to justify the court sanctioning it; and (iv) determine whether the scheme of arrangement is effective in other relevant jurisdictions.[3] The court may hear arguments from the scheme creditors whose rights would be affected by the scheme of arrangement.

19. Any scheme creditor who objects to the scheme of arrangement may appear at the relevant Hong Kong Court hearing to represent its position, including at the convening hearing and the sanction hearing. Scheme creditors may also make written submissions in advance of the sanction hearing. Therefore, scheme creditors attending these proceedings will have a full and fair opportunity to be heard in connection with the scheme of arrangement.

B.  ***Overview of the Hearings***

20. The scheme of arrangement process requires at least two Hong Kong Court hearings.

---

[3] *Re China Oil Gangran Energy Group Holdings Ltd* [2021] 3 HKLRD 69; [2021] HKCFI 1592 at [15], [20] and [21].

The purpose of the first hearing—the convening hearing—is to ask the Hong Kong Court to convene one or more meetings of creditors. At the convening hearing, the Hong Kong Court's role is mainly to give directions for the convening of scheme meeting(s) and ensure that the scheme creditors will receive sufficient notice of the scheme meeting(s). Additionally, at the convening hearing, the Hong Kong Court will appoint a person to chair the scheme meeting(s) and typically sets a date for the sanction hearing (described below).

21. If the scheme of arrangement is approved by the requisite statutory majorities at the scheme meeting(s), there will be a second hearing—the sanction hearing—at which the Hong Kong Court will be asked to sanction the scheme of arrangement. At the sanction hearing, the debtor must demonstrate or otherwise satisfy the Hong Kong Court that:

(a) the scheme of arrangement is for a permissible purpose;

(b) creditors within a single class have sufficiently similar legal rights that they can consult together with a view to their common interest at a single meeting;

(c) the scheme meeting(s) were duly convened in accordance with the Hong Kong Court's directions;

(d) creditors have been given sufficient information about the scheme of arrangement so as to enable them to make an informed decision as to whether or not to support it;

(e) a majority in number representing 75% in value of the creditors present and voting have voted to approve the scheme of arrangement;

(f) the scheme of arrangement is one that an intelligent and honest person acting in respect of its interests as a member of the class within which it votes, might reasonably approve; and

9

(g)      in an international case, that there is sufficient connection between the scheme of arrangement and Hong Kong and that the scheme of arrangement is effective in other relevant jurisdictions.[4]

22.    The sanction hearing is held in open court. Any scheme creditor is entitled to be heard at the sanction hearing and may argue that the Hong Kong Court should not approve the scheme of arrangement.

23.    Once the Hong Kong Court holds the sanction hearing and if it sanctions or approves the applicable scheme of arrangement, it will enter the sanction order, and the debtor must file that order with the Hong Kong Registrar. Under Hong Kong law and pursuant to the Companies Ordinance, the scheme of arrangement will become effective upon its terms on filing of the sanction order.

24.    Once the sanction order is filed, the scheme of arrangement will bind all scheme creditors, including those creditors who voted in favor of the scheme of arrangement, those creditors who voted against it, and those creditors who did not vote at all.

## THE SCHEME AND HONG KONG PROCEEDING

25.    I respectfully refer the Court to the Verified Petition and the Foreign Representative Declaration, each filed contemporaneously herewith, for a description of the history and business of the Debtor, the events leading up to filing the Originating Summons in Hong Kong, and the terms of the Scheme.

---

[4]    *Re China Oil Gangran Energy Group Holdings Ltd* [2021] 3 HKLRD 69; [2021] HKCFI 1592 at [14].

### I. Filing of Originating Summons with the Hong Kong Court

26. On August 15, 2025, the Debtor filed an originating summons with the Hong Kong Court (the "Originating Summons"), a true and correct copy of which is attached hereto as **Exhibit A**, commencing the Scheme in the Hong Kong Court, and seeking, among other things, an order directing the Debtor to convene a meeting for each class of Scheme Creditors and requesting a convening hearing in respect of the Scheme (the "Convening Hearing"). The Scheme provides that the Hong Kong Court will have exclusive jurisdiction to hear and determine any suit, action, or proceeding, and to settle any dispute that arises out of, or in connection with, the terms of the Scheme or its implementation, or out of any action taken or not taken under the Scheme or in connection with the administration of the Scheme.

### II. Convening Hearing in Respect of the Scheme

27. The Convening Hearing was held before the Hong Kong Court on September 12, 2025. An ad hoc group of creditors, who represent approximately 29.9% in value of the Existing US Public Notes, instructed legal representatives to attend the Convening Hearing, and made submissions in support of the Scheme and to explain the rationale and quantum of the work fees payable to the ad hoc group. Tai Fung Bank Limited, one of the lenders under the Existing Class 2 Debt (representing approximately 0.8% in value of the Existing Debt) also instructed counsel to attend the Convening Hearing. Tai Fung Bank Limited did not oppose the Company's application to convene the Scheme Meeting, but wanted to register its concern that there was a risk that the Scheme would have an unintended impact on certain credit support granted by the PRC-incorporated subsidiaries of the Company. The Company is presently liaising with Tai Fung Bank

11

Limited to address its concerns. No other Scheme Creditors instructed legal representatives to attend the Convening Hearing.

28.     Following the Convening Hearing, the Hong Kong Court entered an order (the "Convening Order") with respect to the Scheme: (i) scheduling the scheme meeting for each class of Scheme Creditors in respect of the Scheme (the "Scheme Meetings")[5] and (ii) scheduling a hearing to sanction the Scheme for December 4, 2025 (the "Sanction Hearing"). A true and correct copy of the Convening Order is attached hereto as **Exhibit B**. Under the Convening Order, the Hong Kong Court authorized and appointed Mat Ng or, if he is unable to act in that capacity, Nigel Trayers (both of Grant Thornton Recovery & Reorganisation Limited) to act as chairperson in respect of the Scheme Meetings (the "Scheme Chairperson").

### III.     Distribution of Notices and Related Documents in Connection with the Scheme

29.     In accordance with the Convening Order, a notice of the Scheme Meetings will be provided to the Scheme Creditors on or around October 13, 2025. Such notice will be provided or made available: (a) on the following website maintained by Sodali & Co (the "Information Agent"), in its capacity as the Debtor's information agent for the Scheme: https://projects.sodali.com/countrygarden (the "Transaction Website"); (b) through the Euroclear Bank SA/NV and Clearstream Banking S.A. clearing systems, as applicable; and (c) by the Information Agent via electronic mail to each Scheme Creditor for whom the Information Agent has contact information. The Scheme Creditors will also be notified of the Scheme Meetings through an announcement by the Debtor on the Main Board of The Stock Exchange of Hong Kong

---

[5] The Convening Order (as defined below) initially set the Scheme Meetings on October 22, 2025. However, that date is subject to "any adjournment as may be appropriate." The Debtors are currently negotiating certain final commercial terms with its Scheme Creditors, and accordingly plan to adjourn the Scheme Meetings to on or around November 3, 2025.

12

Limited. Additionally, in respect of Scheme Creditors that are lenders under certain loans of the Debtor or holders of certain notes guaranteed by the Debtor that are not cleared through the relevant clearing systems, the notice was sent to the email address of such Scheme Creditors (where applicable) in accordance with the notice provisions of the underlying finance documents.

30. As required by the terms of the Convening Order, accompanying such notice of the Scheme Meetings will be electronic copies and/or a link to the Transaction Website to enable the Scheme Creditors to view and download the Scheme, the explanatory statement (the "Explanatory Statement") and the solicitation materials in respect of the Scheme, as well as the other documents referred to in the Explanatory Statement as being available on the Transaction Website. A true and correct copy of the Explanatory Statement is attached hereto as **Exhibit C**.[6]

### IV.    The Scheme Meetings

31. The Scheme Meetings will be held on or around November 3, 2025. At each of the Scheme Meetings, a vote will be held to determine whether a majority in number representing at least 75% in value of the Scheme Creditors present and voting in person or by proxy at that Scheme Meeting approve the Scheme. As set forth in the Convening Order, the Sanction Hearing is currently scheduled to be held on December 4, 2025. Convening Order ¶ 10.

32. Under applicable Hong Kong law, each class of scheme creditors must be properly constituted so that each class of scheme creditors consists of creditors whose existing legal rights against the scheme company (the "Rights In") are not so dissimilar as to make it impossible for

---

[6] The copy of the Explanatory Statement attached to attached as **Exhibit C** hereto was the version that was filed with the Hong Kong Court prior to the Convening Hearing on September 12, 2025. The Debtor is continuing to negotiate with its Scheme Creditors to finalize certain commercial terms of the Restructuring, which will result in further changes to the Explanatory Statement. It is anticipated that the Explanatory Statement will be finalized and sent out to the Scheme Creditors on or around October 13, 2025. The Debtor will file the final version of the Explanatory Statement on the docket with this Court along with a redline to the version attached to the Counsel Declaration as Exhibit D thereof as soon as it is available.

them to consult together in consideration of their common interest. Further, if the rights of scheme creditors that are so dissimilar or would be affected so differently by the scheme (the "Rights Out") as to make it impossible for them to consult together with a view to their common interest, they must be divided into separate classes, with a separate meeting held for each class of creditor. The Debtor has considered the existing legal rights of each of the Scheme Creditors and how their legal rights are contemplated to be affected by the Scheme, and decided that it is appropriate for the Scheme Creditors to be divided into two separate classes: (i) Scheme Creditors (Class 1) (as defined in the Explanatory Statement) who hold Existing Class 1 Debt; and (ii) Scheme Creditors (Class 2) (as defined in the Explanatory Statement) who hold Existing Class 2 Debt as the "Rights In" and the "Rights Out" of the Scheme Creditors (Class 1) and Scheme Creditors (Class 2) against the Debtor are, in each case, sufficiently similar vis-à-vis one another in each class.

33. If the Scheme is approved by the Scheme Creditors, the Debtor will provide notice to the Scheme Creditors informing them that the Scheme has been approved and that the Sanction Hearing has been scheduled. Scheme Creditors will also be informed that they can attend and raise any issues or objections at the Sanction Hearing. In anticipation of the Sanction Hearing, the Scheme Chairperson will attest to the compliance of the Debtor with the Convening Order and the conduct of the Scheme Meetings. The Hong Kong Court will then decide whether to sanction the Scheme.

34. If the Hong Kong Court deems it appropriate to enter an order sanctioning the Scheme following the Sanction Hearing (the "Sanction Order"), the Scheme will become effective on its terms once a sealed copy of the Sanction Order has been delivered to the Hong Kong Registrar.

35. As the Hong Kong Proceeding is ongoing in parallel to this Chapter 15 Case, with the Scheme Meetings being scheduled on or around November 3, 2025 and Sanction Hearing being scheduled for December 4, 2025, I will file a supplemental declaration to update this Court on the status of the Hong Kong Proceeding and the outcome of the Scheme Meetings and the Sanction Hearing.

*[Remainder of page left intentionally blank]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 1, 2025

                                      */s/ Richard Mark Woodworth*
                                      Richard Mark Woodworth